AO 241 (Rev. 09/17)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Eastern District of Virginia |
|---|---|

| Name (under which you were convicted):<br>Markelyn Lamontre Jones | Docket or Case No.:<br>CR16001073-00 |
|---|---|

| Place of Confinement :<br>Keen Mountain Correctional Center | Prisoner No.:<br>1658057 |
|---|---|

| Petitioner (include the name under which you were convicted)<br>Markelyn Lamontre Jones | v. | Respondent (authorized person having custody of petitioner)<br>Israel Hamilton, Warden |
|---|---|---|

The Attorney General of the State of: Virginia

## PETITION

1.   (a) Name and location of court that entered the judgment of conviction you are challenging:

Circuit Court of the City of Suffolk, 150 N Main St, Suffolk, VA 23434

(b) Criminal docket or case number (if you know): CR16001073-00, CR16001074-00, CRI6001076-00,

2.   (a) Date of the judgment of conviction (if you know): 05/10/2018

(b) Date of sentencing:   05/10/2018

3.   Length of sentence: "active sentence" of 38 years' imprisonment

4.   In this case, were you convicted on more than one count or of more than one crime?   ☑ Yes   ☐ No

5.   Identify all crimes of which you were convicted and sentenced in this case:

second degree murder

armed common law burglary

robbery

use of firearm in the commission of an abduction

use of a firearm during a felony

use of a firearm during a robbery

6.   (a) What was your plea? (Check one)

|   | ☐ (1) | Not guilty | ☐ (3) | Nolo contendere (no contest) |
|---|---|---|---|---|
|   | ☑ (2) | Guilty | ☐ (4) | Insanity plea |

Page 2 of 16

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _____

_____

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

    ☐ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

    ☐ Yes    ☑ No

8.    Did you appeal from the judgment of conviction?

    ☑ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court:    Court of Appeals of Virginia

(b) Docket or case number (if you know):    0861-18-1

(c) Result:    conviction affirmed

(d) Date of result (if you know):    03/06/2019

(e) Citation to the case (if you know): _____

(f) Grounds raised:    Trial court erred in denying motion to withdraw guilty plea when the guilty plea was made (1) through a misunderstanding as to its effect, (2) by an honest mistake of material fact and/or (3) as a result of undue influence.

_____

_____

_____

_____

(g) Did you seek further review by a higher state court?    ☑ Yes    ☐ No

    If yes, answer the following:

    (1) Name of court:    Supreme Court of Virginia

    (2) Docket or case number (if you know):    No. 190787

    (3) Result:    affirmed

AO 241 (Rev. 09/17)

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?   ☐ Yes   ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.   Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?   ☐ Yes   ☑ No

11.   If your answer to Question 10 was "Yes," give the following information:

(a)   (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☐ No

(7) Result: _____

AO 241 (Rev. 09/17)

(8) Date of result (if you know): _____

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❏ Yes   ❏ No

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:      ☐ Yes      ☐ No

(2) Second petition:     ☐ Yes      ☐ No

(3) Third petition:      ☐ Yes      ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:**     Virginia Court's Erred in Affirming Petitioner's Conviction

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The Virginia Courts Ruled Contrary To, or Unreasonably Applied, Federal Law and Made Unreasonable Factual

Determinations in Light of the Trial Record, by Finding That Jones Had Knowingly and Voluntarily Entered a Plea

Agreement and Waived His Right to Appeal When the Plea Agreement Was Entered in Violation of Petitioner's

Right to the Effective Assistance of Counsel.  See Memorandum of Law, Attached

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(c)    **Direct Appeal of Ground One:**

      (1) If you appealed from the judgment of conviction, did you raise this issue?   ☑ Yes   ☐ No

      (2) If you did not raise this issue in your direct appeal, explain why: _____

      _____

      _____

**(d) Post-Conviction Proceedings:**

      (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

         ☐ Yes   ☑ No

      (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

      (3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☐ No

      (4) Did you appeal from the denial of your motion or petition?   ☐ Yes   ☐ No

      (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☐ Yes   ☐ No

      (6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

      (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

Page 7 of 16

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have
used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

(c)   **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐  Yes     ☐  No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐  Yes     ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

AO 241 (Rev. 09/17)

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?          ☐  Yes     ☐  No

(4) Did you appeal from the denial of your motion or petition?     ☐  Yes     ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐  Yes  ☐  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two : _____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c) **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☐ No

    (2) If you did not raise this issue in your direct appeal, explain why: _____

    _____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☐ Yes ☐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

    _____

    (3) Did you receive a hearing on your motion or petition? ☐ Yes ☐ No

    (4) Did you appeal from the denial of your motion or petition? ☐ Yes ☐ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☐ Yes ☐ No

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _____

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

    _____

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐  Yes     ☐  No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐  Yes     ☐   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion or petition?                                    ☐ Yes        ☐ No

(4) Did you appeal from the denial of your motion or petition?                           ☐ Yes        ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☐ Yes        ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four: _____

_____

AO 241 (Rev. 09/17)

13.  Please answer these additional questions about the petition you are filing:

(a)  Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?  ☑ Yes   ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

(b)  Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

no _____

_____

14.  Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?  ☐ Yes   ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

_____

15.  Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?  ☐ Yes   ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____

(b) At arraignment and plea: _____

(c) At trial: _____

(d) At sentencing: _____

(e) On appeal: _____

(f) In any post-conviction proceeding: _____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     ☐ Yes   ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:
_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?     ☐ Yes   ☐ No

18.   TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

Petitioner was unaware of the ability to seek relief in federal court or the deadlines associated with the filing of a § 2254 petition.  He did not receive any communication from counsel following the denial of hi appeal. Further, Petitioner was incarcerated and on lock down due to COVID-19 for several months bewtween March of 2020 and August 2021. During that time period Petitioner did not have access to legal materials. The deadline to file was March 7, 2021 and missing that deadline was beyond

AO 241 (Rev. 09/17)

Petitioner's control. Therefore the deadline should be equitably tolled and the petition should be

considered despite being filed beyond the statute of limitations.  Also, Petitioner asserrts that a minifest

injustice will occur if the § 2254 petition is dismissed without the errors of the state court being corrected

See Memorandum of Law, attached

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in

part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in
custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration
of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of
the Constitution or laws of the United States is removed, if the applicant was prevented from
filing by such state action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court,
if the right has been newly recognized by the Supreme Court and made retroactively applicable to
cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

     (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:   Petitioner respectfully requests that the state court judgment of conviction be vacated

or any other relief to which petitioner may be entitled.

                                            N/A

                                    Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on *May, 26, 2022* (month, date, year).

Executed (signed) on *May, 26, 2022* (date).

                                *M. Jones*

                                Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**MARKELYN LAMONTRE JONES,**

      **Petitioner,**

                                      No. _____

**v.**

**ISRAEL HAMILTON, WARDEN**

      **Respondent.**

**MEMORANDUM OF LAW IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

**I.**    **Introduction**

Petitioner, Markelyn Lamontre Jones, submits that the Virginia courts ruled contrary to federal precedent and made factual determinations that were unreasonable in light of the record in affirming Petitioner's conviction. Petitioner was denied the right to the effective assistance of counsel in the state courts, and he now asks that this Court order that his convictions be vacated. Further, a manifest injustice will occur if Petitioner's convictions are not vacated. Accordingly, this Court should permit relief under § 2254 despite procedural obstacles apparent in this case.

**II.     Ground for Relief:**

**Ground One:**    The Virginia Courts Ruled Contrary To, or Unreasonably Applied, Clearly Established Federal Law and Made Unreasonable Factual Determinations in Light of the Trial Record, by Finding That Jones Had Knowingly and Voluntarily Entered a Plea Agreement and Waived His Right to Appeal When the Plea Agreement Was Entered in Violation of Petitioner's Right to the Effective Assistance of Counsel.

   **A.**    Petitioner Had the Right to Effective Assistance of Counsel in Rendering Plea Advice.

   **B.**    Counsel provided objectively unreasonable advice leading Petitioner to enter a plea that he otherwise would have never entered

   **C.**    Petitioner was prejudiced by counsel's objectively unreasonable advice because it caused him to enter a plea agreement that he otherwise would have never entered.

   **D.**    The AEDPA deadline to file must be equitably tolled because the failure to file was due to circumstances beyond Petitioner's control and because a manifest injustice will occur if this Court fails to correct the errors made by the Virginia courts.

**III.    Certification of Exhaustion**

Before seeking habeas relief, a state prisoner must exhaust available state remedies by fairly presenting all claims to the state courts. 28 U.S.C. § 2254(b). To "give the state courts one full opportunity to resolve any constitutional issues" state prisoners must invoke "one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728 (1999)). The exhaustion requirement is a rule of comity, not jurisdiction, Castille v. Peoples, 489 U.S. 346, 349, 103 L. Ed. 2d 380, 109 S. Ct. 1056 (1989), and is designed to allow state courts the opportunity to correct a state's alleged violation of federal constitutional law before federal courts consider the matter. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 144 L. Ed. 2d 1, 119 S. Ct. 1728 (1999).

2

Exhaustion requires that petitioner fairly present his claims to every level of state court, including offering each claim for discretionary review by a State's highest court, and afford each reviewing court a fair opportunity to act on those claims. O'Sullivan, 526 U.S. at 845. The fair presentation requirement has two components: (1) presentation of the same claim, and (2) presentation to all appropriate courts. Id. at 844. A claim is fairly presented when the petitioner presented to the state courts the "'substance' of his federal habeas corpus claim." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997)(quoting Anderson v. Harless, 459 U.S. 4, 6, 74 L. Ed. 2d 3, 103 S. Ct. 276 (1982) (per curiam)); see also, Newton v. Million, 349 F.3d 873, 877 (6th Cir. 2003)(a claim has been fairly presented if: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law").

"The exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state, Sweezy v. Garrison, 694 F.2d 331, 331 (4th Cir. 1982) (per curiam), cert. denied, 461 U.S. 908, 76 L. Ed. 2d 812, 103 S. Ct. 1882 (1983), or when a state procedural rule would bar consideration if the claim was later presented to the state court, Coleman v. Thompson, 501 U.S. 722, 735 n.1, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); Teague v. Lane, 489 U.S. 288, 297-98, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989); see also George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture.");

In the state courts, Petitioner challenged the validity of the plea agreement and his guilty plea

3

as being unknowingly and involuntarily entered due to pressure from his family based on false promises made by counsel that Petitioner would receive a sentence of 13-years' imprisonment, when such a sentence was impossible under the terms of the plea agreement. See 11/13/17 Transcript, p 7, 9, 17-22. Not only did counsel vastly understate the penalty Petitioner would receive by entering the plea agreement, but counsel also promised Petitioner that he would receive such a sentence because counsel had a special understanding with the trial court judge. Id p 19. As noted during the hearing on the motion to withdraw the guilty plea, Petitioner was misinformed by defense counsel concerning the potential penalties and effect of entering the plea agreement. Id p24-25. Despite these facts, the trial court refused Petitioner's request to withdraw his plea agreement.

Although Petitioner's claims were not phrased precisely in terms of constitutional law and did not specifically assert the denial of a specific constitutional right, the facts and circumstances alleged by Petitioner were "well within the mainstream of constitutional law" demonstrating that the plea agreement was obtained in violation of Petitioner's right to the effective assistance of counsel. See Newton v. Million, 349 F.3d 873, 877 (6th Cir. 2003). Thus, the substance of his claims were fairly presented in the Virginia state court. Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).

The Court of Appeals for Virginia affirmed, finding that the appellate waiver contained in the plea agreement barred appellate review of the trial court's denial of Petitioner's motion to withdraw the plea agreement. In doing so, the Virginia court ruled contrary to, or unreasonably applied, clearly-established federal case law, and made unreasonable factual determinations in light of the trial record, in failing to find the plea agreement to be invalid due to ineffective assistance of counsel and in relying on the constitutionally invalid plea agreement to dismiss the appeal. Petitioner has exhausted his claims by raising them, in the state court, appealing them to the Court of Appeals

4

for Virginia and requesting an appeal in the Supreme Court of Virginia. See, <u>Jones v. Commonwealth</u>, No. 190787. As a result, Petitioner may now proceed in this Court and raise those exhausted issues.

But even if this Court finds that the substance of his claim was not "fairly presented" in the state courts, the claim is exhausted because "it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture." <u>George v. Angelone</u>, 100 F.3d 353, 363 (4th Cir. 1996). A petition for a writ of habeas corpus under Virginia law must "be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code Ann. § 8.01-654(A)(2). Habeas petitions filed after the expiration of the deadline will be dismissed even if the defendant received ineffective assistance of counsel and would have been successful had he timely filed petitions for writs of habeas corpus pursuant to § 8.01-654. <u>Commonwealth v. Morris</u>, 281 Va. 70, 705 S.E.2d 503, cert. denied, 565 U.S. 825, 132 S. Ct. 115, 181 L. Ed. 2d 39 (2011).

Here, Petitioner is time barred from asserting his ineffective assistance of counsel claim in a petition for writ of habeas corpus under Va. Code Ann. § 8.01-654. Records show that the Virginia Supreme Court denied relief on December 6, 2019. Therefore, he had only until December 6, 2020 to file a state habeas petition and is procedurally barred from raising his claim in the state courts. "[I]t would serve no useful purpose and would only prolong the final resolution of this matter to require [Petitioner] to file a futile state petition." <u>Bassette v. Thompson</u>, 915 F.2d 932, 937 (4th Cir. 1990). Thus, the claim is exhausted for § 2254 purposes because his claim would be procedurally defaulted if he attempted to raise it at this juncture in a state habeas petition. <u>George v. Angelone</u>,

100 F.3d 353, 363 (4th Cir. 1996).

While the exhaustion requirement is satisfied, this Court may address Petitioner's claims only if "he is able to show just cause for his default and prejudice resulting therefrom." Bassette, 915 F.2d at 937. Petitioner makes such a showing here. Petitioner did not raise his claim for ineffective assistance of counsel in a state habeas petition because he was abandoned by counsel following the conclusion of his attempted direct appeal. Further, from March 2020 until after the end of 2020, Petitioner was on nearly continuous lock down due to the COVID-19 pandemic. See Exhibit A, Affidavit. During this time period, Petitioner had no access to legal materials for more than a year. And, Petitioner's access to communication with counsel and his family was limited and inconsistent, largely because mail was "quarantined" during the pandemic. Id. As a result Petitioner did not learn of the ability to seek further relief until far after the expiration of the date to seek post-conviction relief had expired. Id. Because "objective factor[s] external to the defense" impeded Petitioner's efforts to comply with the state procedural rule, just cause is shown for the procedural default. Wolfe v. Johnson, 565 F.3d 140, 158 (4th Cir. 2009). And, Petitioner will suffer actual prejudice if this Court does not step in to address Petitioner's claim because Petitioner's guilty plea and conviction is constitutionally invalid as it was obtained in violation of Petitioner's right to the effective assistance of counsel.

Finally, the failing to review Petitioner's claims will result in a fundamental miscarriage of justice. Murray, 477 U.S. at 496 (allowing review when "a constitutional violation has probably resulted in the conviction of one who is actually innocent."). Accordingly, his claims of ineffective assistance of counsel should be reviewed by this Court.

## IV.    Standard of Review

To be cognizable under 28 U.S.C. § 2254, Petitioner's claims must concern state court judgments that either ran afoul of clear Supreme Court case law <u>or</u> represented an unreasonable determination of the facts in light of the record. The exact language is a challenge to a state court judgment is cognizable if the judgment:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).

"A habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." <u>Bell v. Cone</u>, 535 U.S. 685, 694, 122 S. Ct. 1843 (2002). "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." <u>Id</u>.

A state court decision is "contrary to" Supreme Court precedent under § 2254(d)(1) where the state court reached a "conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413, 120 S. Ct. 1495 (2000). In other words, a decision is contrary to clearly established federal law if it applies a rule that contradicts Supreme Court precedent. <u>Brown v. Payton</u>, 544 U.S. 133, 141, 125 S. Ct. 1432 (2005).

7

"[C]learly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Taylor, 529 U.S. at 412. An "unreasonable application" of clearly-established federal law occurs when a state court applies Supreme Court precedent in an "objectively unreasonable manner." Brown, 544 U.S. at 141. The unreasonable application test is an objective one—a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly. Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S. Ct. 2527 (2003); Taylor, 529 U.S. at 411. Rather, the test is whether the state court: (1) "applie[d] a rule that contradicts the governing law set forth in [Supreme Court] cases" or (2) "confront[ed] a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrive[d] at a result different from our precedent." Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910 (2001) (quoting Taylor, 529 U.S. at 405-06).

"It is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888 (3d Cir. 1999). However, it is not necessary for a petitioner to cite factually identical Supreme Court precedent. He may instead rely on a Supreme Court rule that, by virtue of its factual similarity or intention to apply to variant factual situations, "can fairly be said to require a particular result in a particular case." Id. at 888-89.

Because Petitioner filed this § 2254 petition well after the adoption of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996), review of his petition is subject to the terms of the Act. Lindh v. Murphy, 521 U.S. 320, 326-27, 117 S. Ct. 2059

8

(1997); <u>Macias v. Makowski</u>, 291 F.3d 447, 450 (6th Cir. 2002). Under the AEDPA, the district court reviews state court factual determinations to see whether they involved "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). State court factual findings "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." <u>Id.</u> at § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 341-42, 123 S. Ct. 1029 (2003).

A state court adjudication is an "unreasonable application" of clearly established federal law if the court "identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409. Importantly, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." <u>Id.</u> at 410 (emphasis in original). A state court decision is unreasonable if "evaluated objectively and on the merits, [it] resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." <u>Matteo</u>, 171 F.3d at 890. The Third Circuit is of the view that in evaluating reasonableness, federal habeas courts can consider the decisions of lower courts that serve as "helpful amplifications" of Supreme Court precedent. <u>Matteo</u>, 171 F.3d at 890.

## V.    Statement of the Case and Relevant Facts

On June 14, 2016, Markelyn Lamontre Jones ("Petitioner") was charged by way of indictment with several felony offenses involving the commission of an armed robbery. According to documents, Petitioner, was just 17 when he and then-19-year-old Mandocous Jayni Rivers burst into an apartment at Wilson Pines Apartments on East Washington Street on March 11, 2016.

9

According to records, Aaron L. Hunter was shot and killed. According to testimony and documents, Petitioner and Rivers were armed with pistols. Petitioner allegedly led one man, Caleb Pittman, into a bedroom when a gunshot was heard in the other room. Rivers apparently fired his weapon and Hunter was found shot in the dining room.

Petitioner was represented by Attorney James Brocciletti. After discussions with his attorney, Petitioner entered into a written plea agreement. Under the terms of the plea agreement, Jones agreed to plead guilty to an amended charge of second-degree murder, in violation of 18.2-32; robbery, in violation of 18.2-58; use of a firearm during the commission of a robbery, in violation of 18.2-53.1; armed common law burglary, in violation of 18.2-89; use of a firearm in an abduction, in violation of 18.2-53.1; and use of a firearm in committing a felony (1st Offense), in violation of 18.2-53.1. See, Plea Agreement. Jones' attorney told him to accept the plea agreement and that he would face a range of 13 to 20 years imprisonment and that he would receive a sentence of 13 years. In reality, however, there was no agreement regarding sentence; rather, the parties agreed that a presentence investigation would be prepared, and each side would be permitted to argue for the sentence it felt was appropriate.

The plea agreement included blanket waiver of Petitioner's right to withdraw his guilty plea and to appeal his case. Specifically, paragraph 8 of the plea agreement provided:

> The defendant agrees that under no circumstances will he move or request of the court that his plea of guilty be withdrawn. The defendant specifically waives any and all rights to such a withdrawal of his plea of guilty and acknowledges that any such motion would be in bad faith and to the prejudice of the Commonwealth. The defendant waives any right to request the court to reconsider any sentence imposed by the court pursuant to Virginia Code Section 19.2-303 or any similar statute. The defendant agrees not to ask the court to defer disposition or take under advisement any of the charges to which he has pled guilty and been found guilty or agreed to be found guilty, or at any time ask the court to dismiss any of such charges, and

10

specifically waives any right to do so. The defendant agrees and fully understands that no charges to which he pled guilty to will be deferred, or taken under advisement, or dismissed under the terms of this plea agreement. Further, the defendant waives any right of appeal to the Court of Appeals of Virginia and the Virginia Supreme Court or any other appellate court. Additionally, the defendant waives any other post-conviction relief whatsoever, including, but not limited to, claims of actual innocence. However, nothing in this paragraph shall apply to and/or infringe upon the defendant's right to seek relief for claims of ineffective assistance of counsel.

When Petitioner received the presentence investigation report, it was revealed that counsel had miscalculated the guideline range. Instead of a range of 13 to 20 years, the guidelines recommended a range of 18 to 31 years' imprisonment. Petitioner believed that the guideline range was incorrect and asked his attorney to research the guidelines and object to the calculations. Counsel told Petitioner again that he knew the judge and that judge would sentence him below the guideline range calculated in the presentence investigation report. (Exhibit A, Affidavit)

At this point, Petitioner lost confidence in counsel and enlisted the help of a jailhouse attorney to help prepare a motion to withdraw the guilty plea and on June 26, 2017, Petitioner filed, that motion. At a hearing on his motion, Petitioner asserted that original attorney had promised him that he would be sentenced to thirteen years' imprisonment if he accepted the plea agreement. Petitioner's mother testified that the attorney told her that "he knew the judge and was confident that [Petitioner] wouldn't get but thirteen years." See, Order, Court of Appeals, No. 0861-18-1. As a result of this promise of special influence over the judge, she pushed Petitioner (who was 19 years of age) to accept the plea agreement. Id Petitioner asserted that counsel's faulty advice that he would receive a 13-year sentence and pressure from his family to accept the plea agreement caused him plead guilty. Id

Petitioner contended that his attorney misled him concerning the guideline range and the term

11

of imprisonment he would receive by entering into the plea agreement. Id. According to Petitioner,

his attorney told him that the sentence recommended under the guidelines was 13 to 20 years and

that he would receive a 13 year sentence because Attorney Broccoletti "knew the judge" and they

had an "understanding" about the sentence to impose. Id. Further, counsel did not advise Petitioner

that he was waiving critical rights by entering the plea agreement and he did not advise Petitioner

of any alternatives to entering the guilty plea. Counsel did not advise Petitioner that the minimum

sentence for the firearm convictions was 13 years and that a range of 13 to 20 years was not possible

under the terms of the plea agreement. Further, Petitioner confirmed that counsel had told him that

he would receive a 13-year sentence because defense counsel and the judge had a special

understanding.

After hearing the evidence and argument, the trial court denied the motion. The trial court

recalled the plea colloquy with appellant and noted that, consistent with its regular practice, it had

reviewed the terms of the plea agreement with him. The trial court found that "[a]t no time did [Mr.

Jones] ... indicate that he didn't understand anything that [the court] read to him. In fact, he pretty

much told the court that he understood everything that's being read to him, and understood the nature

and consequences of his plea." The trial court found that there was not a good faith basis to withdraw

the guilty plea, that Petitioner failed to proffer a viable defense, and, in any event, the trial court

concluded that the plea agreement waived Petitioner's right to seek withdrawal of his guilty plea.

On May 10, 2018, the court imposed its sentence. Although the sentencing guidelines called

for a total term of incarceration of 13 to 20 years and 5-months, the court departed upward.

Sentencing Transcript, p. 40-42. Petitioner did not receive a 13-year sentence as promised by

counsel. Instead, he received a total "active sentence" of 38 years' imprisonment, imposed by the

12

court as follows: 30 years' imprisonment (13 years suspended) for the crime of second degree murder; 20 years' imprisonment (15 years suspended) for armed common law burglary; 10 years' imprisonment (7 years suspended) for robbery; 5 years' imprisonment for use of firearm in the commission of an abduction; 5 years' imprisonment for use of a firearm during a felony; and 3 years' imprisonment for use of a firearm during a robbery. Id; see also, Sentencing Order, 5/10/18.

On May 29, 2018, Petitioner filed a Notice of Appeal and proceeded to the Court of Appeals for Virginia. See, Notice of Appeal. On appeal, Petitioner argued that the trial court erred in denying his motion to withdraw his guilty plea.

On March 6, 2019, in a Per Curiam opinion, the Court of Appeals of Virginia denied Petitioner's appeal. The court did not reach the merits of Petitioner's arguments because it found that Petitioner had waived his right to appeal in the plea agreement. See Order, Jones v. Commonwealth, No 0861-18-1. The court found,

> "Generally, a party may waive by contract any right conferred by law or contract. If the party being charged with relinquishment of a right had knowledge of the right and intended to waive it, the waiver will be enforced." Griffin v. Commonwealth, 65 Va. App. 714,718 (2016) (quoting Burke v. Burke, 52 Va. App. 183, 188 (2008)). Absent constitutional concerns not asserted here, "basic rules of contract law apply to plea agreements." Wright v. Commonwealth, 49 Va. App. 58, 62 (2006). "An express waiver is a 'voluntary action or inaction with intent to surrender a right in esse· with knowledge of the facts and circumstances which gave birth to the right.'" Griffin, 65 Va. App. at 718-19 (quoting Employers Commercial Union Ins. Co. v. Great Am. Ins. Co., 214 Va. 410, 412 (1973)). "Express waivers can be made througha writing, an oral statement, or a combination of both." Id. at 719. "Virginia has long held a criminal defendant can waive 'his appeal of right' if the circumstances demonstrate 'his decision to waive his appeal was made knowingly, voluntarily, and intelligently.'"Jones v. Commonwealth, 293 Va. 29, 44 (2017) (quoting Davidson v. Commonwealth, 244 Va. 129, 131 (1992)); see also Congdon v. Commonwealth, 57 Va. App. 692,699 (2011) (same)."

See Order, Jones v. Commonwealth, No 0861-18-1, p 3-4 .

13

The court found that because Petitioner "never expressed that he did not understand the terms and effect of the plea agreement" and "told the [c]ourt that he understood everything that's being read to him, and understood the nature and consequences of his plea" and because he waived his right to appeal, the court dismissed his appeal. Id at p 4.

The Virginia Supreme Court denied Petitioner's request to appeal further on December 6, 2019. This appears to be the last action taken, as the record is devoid of any further appeals or post conviction motions.

**VI.     Law and Argument as to Grounds for Relief**

> **Ground One: The Virginia Courts Ruled Contrary To, or Unreasonably Applied, Clearly Established Federal Law and Made Unreasonable Factual Determinations in Light of the Trial Record, by Finding That Petitioner Knowingly and Voluntarily Entered a Plea Agreement and Waived His Right to Appeal When the Plea Agreement Was Entered in Violation of Petitioner's Right to the Effective Assistance of Counsel.**

The Sixth Amendment to the U.S. Constitution guarantees that criminal defendants are entitled to the assistance of counsel in presenting their defense. U.S. Const. amend VI. "The right to counsel is a fundamental right on criminal defendants; is assures the fairness, and thus the legitimacy, of our adversary process. Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S. Ct. 2574 (1986). Further, the Court has recognized that "the right to counsel is the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 (1970).

To succeed on a claim of ineffective assistance of counsel, a defendant must show that his "counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v.  Washington, 466 U.S. 668, 686, 104 S.Ct. 2055, 2063 (1984).  The Strickland Court went on to hold that in order for a defendant to

14

prevail on an ineffective assistance of counsel claim, he must satisfy a two-prong test. A defendant should demonstrate that the representation he received "fell below an objective standard of reasonableness" and "a reasonable probability that but for counsel's unprofessional errors, the results of the proceedings would have been different." Id. at 688, 694; Gall v. Commonwealth, 702 S.W.2d 37, 39 (1985), cert. denied, 478 U.S. 1010, 92 L. Ed. 2d 724, 106 S. Ct. 3311 (1986).

A court reviewing a claim of ineffective assistance must determine whether a reasonable probability exists that, but for counsel's unreasonable performance, the results of the proceedings would have been different or whether the result was fundamentally unfair or unreliable. Id., *citing* Lockhart v. Fretwell, 113 S.Ct. 838 (1993). Ultimately, the Strickland test requires courts to focus upon whether counsel's performance was sufficient to ensure the fundamental fairness of the proceeding. Id. However, the prejudice that must be shown need not be anything more than something as small as one additional day in jail. *See* Glover v. United States, 531 U.S. 198 (2001).

A lack of success is not proof of unreasonableness, see Strickland, 466 U.S. at 689, and strategic and tactical decisions are not grounds for an ineffective assistance claim unless counsel displayed "ineptitude, inexperience, lack of preparation or unfamiliarity with basic legal principles." Commonwealth of the Virgin Islands v. Weatherwax ("Weatherwax I"), 20 F.3d 572, 579 (3d Cir. 1994), rev'd on other grounds, Commonwealth of the Virgin Islands v. Weatherwax ("Weatherwax II"), 33 V.I. 399, 77 F.3d 1425, 1435 (3d Cir. 1996). Prejudice exists if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also United States v. DeRewal, 10 F.3d 100, 104 (3d Cir. 1993). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

15

In assessing the likelihood that the result would have been different, courts "must consider the totality of the evidence before the judge or jury." Id. at 695. This standard of prejudice applies when counsel's deficiencies deprive his client of a substantive or procedural right. See Williams v. Taylor, 529 U.S. 362, 391-93 (citing Lockhart, 506 U.S. at 369; Nix v. Whiteside, 475 U.S. 157, 175, 89 L. Ed. 2d 123, 106 S. Ct. 988 (1986) ("The 'benchmark' of an ineffective assistance claim is the fairness of the adversary proceeding."). In order to establish prejudice as a result of deficient representation when it affected the fundamental fairness of the proceedings, a defendant must demonstrate that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Lockhart, 506 U.S. at 369 (citing Kimmelman v. Morrison, 477 U.S. 365, 374, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986)).

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 690-91. A failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted. ABA Standards for Criminal Justice 4-4.1(a) (3d ed. 1993). Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. Id. Thus, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 690-91.

Under Strickland, "strategic choices made *after thorough investigation* of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than

16

complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. But, when counsel have not fulfilled "their obligation to conduct a thorough investigation," the failure to present evidence in defense cannot be justified as a "tactical decision." Williams v. Taylor, 529 U.S. 362, 396, 120 S. Ct. 1495 (2000) (citing 1 ABA STANDARDS FOR CRIMINAL JUSTICE 4-4.1, commentary, p. 4-55 (2d ed. 1980)); see also Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S. Ct. 2527 (2003). A decision not to investigate is unreasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." Id. (quoting Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991)).

In Williams, the Court found that trial counsel was deficient because the attorney "failed to conduct an investigation that would have uncovered extensive records [that could be used for death penalty mitigation purposes], not because of any strategic calculation but because they incorrectly thought that state law barred access to such records." Williams, 529 U.S. at 395. In Kimmelman, the Court found counsel was deficient where the attorney failed to conduct pretrial discovery and that failure "was not based on 'strategy,' but on counsel's mistaken belie[f] that the State was obliged to take the initiative and turn over all of its inculpatory evidence to the defense." Kimmelman, 477 U.S. at 385. In Hinton, the Court found that the "trial attorney's failure to request additional funding in order to replace an expert he knew to be inadequate because he mistakenly believed that he had received all he could get under Alabama law constituted deficient performance." Hinton, 134 S. Ct. at 1088.

A.     **Petitioner Had the Right to Effective Assistance of Counsel in Rendering Plea Advice.**

The Supreme Court addressed the importance of effective representation during plea

17

negotiations, stating, "plea bargains have become so central to the administration of the criminal

justice system that defense counsel have responsibilities in the plea bargain process, responsibilities

that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in

the criminal process at critical stages." <u>Missouri v. Frye</u>, 132 S. Ct. 1789, 182 L. Ed. 2d 379, 389

(2012). Because the United States' criminal justice system "is for the most part a system of pleas,

not a system of trials," <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), "it is insufficient

simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial

process." <u>Frye</u>, 182 L. Ed. 2d at 389. Plea bargaining "is not some adjunct to the criminal justice

system; it is the criminal justice system." Scott & Stuntz, PLEA BARGAINING AS CONTRACT, 101

Yale L. J. 1909, 1912 (1992). "In today's criminal justice system, therefore, the negotiation of the

plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant."

<u>Frye</u>, 182 L. Ed. 2d at 390.

Accordingly, the Sixth Amendment guarantees a defendant the effective assistance of counsel

at "critical stages of a criminal proceeding," including when he enters a guilty plea. <u>Lafler</u>, 566 U.

S. at 165; <u>Missouri v. Frye</u>, 566 U.S. 134, 140-41, 132 S.Ct. 1399, 182 L.Ed. 2d 379 (2012), <u>Hill</u>

<u>v. Lockhart</u>, 474 U.S. at 58-59. To demonstrate that counsel was constitutionally ineffective, a

defendant must show that counsel's representation "fell below an objective standard of

reasonableness" and that he was prejudiced as a result. <u>Strickland</u>, 466 U.S. at 692, 104 S.Ct. 2052,

80 L. Ed. 2d 674; see also, <u>Webb v. Mitchell</u>, 586 F.3d 383, 393 (6th Cir. 2009).

Further, the American Bar Association Standard 4-5.1 provides in part:

> (b)  Defense counsel should keep the client reasonably and regularly informed
> about the status of the case.  Before significant decision-points, and at other times
> if requested, defense counsel should advise the client with candor concerning all

18

aspects of the case, including an assessment of possible strategies and likely as well as possible outcomes.  Such advisement should take place after counsel is as fully informed as is reasonably possible in the time available about the relevant facts and law.  Counsel should act diligently and, unless time does not permit, advise the client of what more needs to be done or considered before final decisions are made.
* * *

 (e) Defense counsel should provide the client with advice sufficiently in advance of decisions to allow the client to consider available options, and avoid unnecessarily rushing the accused into decisions.

(f) Defense counsel should not intentionally understate or overstate the risks, hazards, or prospects of the case or exert undue influence on the client's decisions regarding a plea.

Accordingly, it is unprofessional conduct for the lawyer to understate or overstate the risks, hazards, or prospects of the case to exert undue influence on the accused's decision as to his or her plea. United States v. Gordon, 156 F.3d 376, 379-81 (2d Cir. 1998) (per curiam) (recognizing ineffective assistance claim where counsel's gross misadvice regarding potential sentencing exposure caused defendant to reject plea offer); see also Lafler v. Cooper, 131 S. Ct. 856, 178 L. Ed. 2d 622 (2011); Missouri v. Frye, 131 S. Ct. 856, 178 L. Ed. 2d 622 (2011).

When a defendant claims that his counsel's inaccurate advice caused him to accept a plea, the defendant can show prejudice by demonstrating "the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163; Hill v. Lockhart, 474 U. S. at 59 ("reasonable  probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). Importantly, whether a defendant would likely be convicted at trial is not relevant to determining whether counsel's unreasonable advice prejudiced the defendant. Lee v. United States, 137 S.Ct. at 1966-67 (2017) (in accepting a plea a defendant has "more to consider than simply the likelihood of success at trial").

19

**B.**      **Counsel provided gross misadvice leading Petitioner to enter a plea that he otherwise would have never entered.**

Petitioner was represented by Attorney James Brocciletti. Counsel advised Petitioner to accept a written plea agreement offered by the government. Counsel advised Petitioner that he had a special understanding with the judge and promised Petitioner that if he entered the agreement, Petitioner would face a guideline sentence of 13 to 20 years and that the judge would sentence him to 13 years' imprisonment. **Exhibit A, Affidavit.** Counsel failed to advise Petitioner that if he entered the agreement Petitioner would be prohibited from withdrawing, or appealing from, his guilty plea, even if Petitioner did not receive the 13-year sentence counsel had promised. Id. The advice rendered by counsel was objectively unreasonable. In reality, a sentence of 13 years imprisonment was impossible under the terms of the plea agreement. And, counsel's assertion that his relationship with the judge would benefit Petitioner in the form of the promised sentence was plainly inappropriate. Yet it was based on this objectively unreasonable advice that Petitioner entered the plea agreement.

Although the decision to plead guilty rests with the defendant, not his lawyer, "the attorney has a clear obligation to fully inform her client of the available options." Smith v. United States, 348 F.3d 545, 552 (6th Cir. 2003). Defense counsel carries the "paramount" duty to ensure that the client's decision to exercise his constitutional right to trial is as informed as possible. Miller v. Straub, 299 F.3d 570, 580 (6th Cir. 2002). "A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain

the sentencing exposure the defendant will face as a consequence of exercising each of the options

available." Smith, 348 F.3d at 553.

Under the terms of the plea agreement, Petitioner would plead guilty to an amended charge

of second-degree murder, in violation of 18.2-32; robbery, in violation of 18.2-58; use of a firearm

during the commission of a robbery, in violation of 18.2-53.1; armed common law burglary, in

violation of 18.2-89; use of a firearm in an abduction, in violation of 18.2-53.1; and use of a firearm

in committing a felony (1st Offense), in violation of 18.2-53.1. See, Plea Agreement. Jones' attorney

told him to accept the plea agreement and that he would face a range of 13 to 20 years imprisonment

and that he would receive a sentence of 13 years. In reality, however, there was no agreement

regarding sentence; rather, the parties agreed that a presentence investigation would be prepared, and

each side would be permitted to argue for the sentence it felt was appropriate.

The plea agreement included blanket waiver of Petitioner's right to withdraw his guilty plea

and to appeal his case. Specifically, paragraph 8 of the plea agreement provided:

> The defendant agrees that under no circumstances will he move or request of the
> court that his plea of guilty be withdrawn. The defendant specifically waives any
> and all rights to such a withdrawal of his plea of guilty and acknowledges that any
> such motion would be in bad faith and to the prejudice of the Commonwealth. The
> defendant waives any right to request the court to reconsider any sentence imposed
> by the court pursuant to Virginia Code Section 19.2-303 or any similar statute. The
> defendant agrees not to ask the court to defer disposition or take under advisement
> any of the charges to which he has pled guilty and been found guilty or agreed to
> be found guilty, or at any time ask the court to dismiss any of such charges, and
> specifically waives any right to do so. The defendant agrees and fully understands
> that no charges to which he pled guilty to will be deferred, or taken under
> advisement, or dismissed under the terms of this plea agreement. Further, the
> defendant waives any right of appeal to the Court of Appeals of Virginia and the
> Virginia Supreme Court or any other appellate court. Additionally, the defendant
> waives any other post-conviction relief whatsoever, including, but not limited to,
> claims of actual innocence. However, nothing in this paragraph shall apply to
> and/or infringe upon the defendant's right to seek relief for claims of ineffective

21

assistance of counsel.

When Petitioner received the presentence investigation report, it was revealed that counsel promise of a 13-year sentence was faulty. Instead of a range of 13 to 20 years, the guidelines recommended a range of 18 to 31 years' imprisonment. Petitioner believed that the guideline range was incorrect and asked his attorney to research the guidelines and object to the calculations. Counsel again told Petitioner that he knew the judge and that judge would sentence Petitioner below the guideline range calculated in the presentence investigation report. **Exhibit A, Affidavit.**

When Petitioner received the presentence investigation report, it was revealed that counsel had miscalculated the guideline range. Instead of a range of 13 to 20 years, the guidelines recommended a range of 18 to 31 years' imprisonment. Petitioner believed that the guideline range was incorrect and asked his attorney to research the guidelines and object to the calculations. Counsel told Petitioner again that he knew the judge and that judge would sentence him below the guideline range calculated in the presentence investigation report. (Exhibit A, Affidavit)

At this point, Petitioner lost confidence in counsel and enlisted the help of a jailhouse attorney to help prepare a motion to withdraw the guilty plea and on June 26, 2017, Petitioner filed, that motion. At a hearing on his motion, Petitioner asserted that original attorney had promised him that he would be sentenced to thirteen years' imprisonment if he accepted the plea agreement. Petitioner's mother testified that the attorney told her that "he knew the judge and was confident that [Petitioner] wouldn't get but thirteen years." See, Order, Court of Appeals, No. 0861-18-1. As a result of this promise of special influence over the judge, she pushed Petitioner (who was 19 years of age) to accept the plea agreement. Id Petitioner asserted that counsel's faulty advice that he would receive a 13-year sentence and pressure from his family to accept the plea agreement caused him

plead guilty. Id

Petitioner contended that his attorney misled him concerning the guideline range and the term

of imprisonment he would receive by entering into the plea agreement. Id. According to Petitioner,

his attorney told him that the sentence recommended under the guidelines was 13 to 20 years and

that he would receive a 13 year sentence because Attorney Broccoletti "knew the judge" and they

had an "understanding" about the sentence to impose. Id. Further, counsel did not advise Petitioner

that he was waiving critical rights by entering the plea agreement and he did not advise Petitioner

of any alternatives to entering the guilty plea. Counsel did not advise Petitioner that the minimum

sentence for the firearm convictions was 13 years and that a range of 13 to 20 years was not possible

under the terms of the plea agreement. Further, Petitioner confirmed that counsel had told him that

he would receive a 13-year sentence because defense counsel and the judge had a special

understanding.

After hearing the evidence and argument, the trial court denied the motion. The trial court

recalled the plea colloquy with appellant and noted that, consistent with its regular practice, it had

reviewed the terms of the plea agreement with him. The trial court found that "[a]t no time did [Mr.

Jones] ... indicate that he didn't understand anything that [the court] read to him. In fact, he pretty

much told the court that he understood everything that's being read to him, and understood the nature

and consequences of his plea." The trial court found that there was not a good faith basis to withdraw

the guilty plea, that Petitioner failed to proffer a viable defense and that the plea agreement waived

Petitioner's right to seek withdrawal of his guilty plea.

After hearing the evidence and argument, the trial court denied the motion. The trial court

found that during the plea colloquy, "[a]t no time did [Mr. Jones] ... indicate that he didn't understand

23

anything that [the court] read to him. In fact, he pretty much told the court that he understood everything that's being read to him, and understood the nature and consequences of his plea." The trial court found that there was not a good faith basis to withdraw the guilty plea, that Petitioner failed to proffer a viable defense, and, in any event, the trial court concluded that the plea agreement waived Petitioner's right to seek withdrawal of his guilty plea. The court did not address the clear facts demonstrating that Petitioner's right to the effective assistance of counsel was violated in rendering false and misleading advice, upon which Petitioner relied upon to enter the plea agreement.

In rendering false and misleading advice designed to persuade Petitioner to enter a plea agreement, counsel was plainly ineffective. The advice that counsel gave Petitioner –that he had an understanding with the judge and that Petitioner would receive a 13-year sentence if he entered the plea agreement– was impossible under the terms of the plea agreement. Further, counsel failed to explain the significance of the rights he was waiving and that Petitioner could not withdraw from the plea agreement or appeal even if he did not receive a 13-year sentence. Accordingly, the advice was not merely erroneous, but appeared to be concocted in order to deceive Petitioner and secure a guilty plea. And even if counsel did not intend to deceive the Petitioner, the inaccuracy of the advice was not "within the range of competence demanded of attorneys in criminal cases." McMann, 397 U.S. at 771; see also Strickland, 466 U.S. at 669.

In Maples v. Stegall, 340 F.3d 433 (6th Cir. 2003), the defendant filed a petition for habeas corpus in federal district court, claiming "his counsel was constitutionally ineffective for misadvising him about his ability to raise the speedy-trial issue after pleading guilty." Id. at 435-36. The district court denied defendant's petition, but the Sixth Circuit vacated that decision and held that:

> [the defendant's] trial counsel provided legal advice that, as the Michigan Court of

24

>           Appeals held, was patently erroneous. Contrary to his counsel's representations,
>           [the defendant's] guilty plea precluded him from appealing his speedy-trial claim.
>           Such advice certainly falls below an "objective standard of reasonableness" and
>           cannot possibly be considered "sound trial strategy.'

Id. at 439.

Like in <u>Maples</u>, the advice of Petitioner's trial counsel was erroneous. Contrary to counsel's

express promises, it was impossible under the terms of the plea agreement for Petitioner to receive

a sentence of 13-years' imprisonment. And, contrary to counsel's advice, the guilty plea precluded

Petitioner from appealing or withdrawing his guilty plea if he did not receive the promised sentence.

Thus, Petitioner was not merely given a bad prediction about what his sentence would be; rather, he

was given advice that included a materially mistaken interpretation of sentencing law and the rights

Petitioner waived by entering the plea agreement. <u>Ross v. Wolfe</u>, 942 F. Supp. 2d 573, 581 (D. Md.

2013) (""There is a difference between a bad prediction within an accurate description of the law and

gross misinformation about the law itself." (citation omitted)). Consequently, "[s]uch advice

certainly falls below an 'objective standard of reasonableness' and cannot possibly be considered

'sound trial strategy.'" <u>Maples</u>, 340 F.3d at 439. Accordingly, counsel's inaccurate advice constitutes

deficient performance.

>    C.    **Petitioner was prejudiced by counsel's objectively unreasonable advice
>           because it caused him to enter a plea agreement that he otherwise would
>           have never entered.**

"To establish Strickland prejudice a defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." <u>Lafler</u>, 566 U.S. at 163 (internal quotation marks and citations omitted). In the context

of ineffective counsel during plea negotiations, a defendant "must show the outcome of the plea

process would have been different with competent advice." <u>Id</u>. Specifically, in order to succeed on

25

a claim that the ineffective assistance of counsel led to "the improvident acceptance of a guilty plea," a defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Id. (internal quotation marks and citations omitted) (alteration in original); see also United States v. Akinsade, 686 F.3d 248, 253 (4th Cir. 2012); Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

In Miller v. United States, 2014 U.S.App. LEXIS 6305 (6th Cir. 2014)(unpublished), the defendant had argued in his § 2255 motion that his attorney was ineffective during plea negotiations for understating the penalty the defendant would receive if he were convicted at trial. The defendant in Miller asserted that had he known he was subject to an enhanced sentenced, he would have decided to accept the government's plea agreement. Id *21-22. The Sixth Circuit vacated the district court's denial of the § 2255 motion and remanding for an evidentiary hearing to determine whether the defendant received ineffective assistance of counsel during plea negotiations. Id; see also, United States v. Reed, 719 F.3d 369 (5th Cir. 2013)(remanding for an evidentiary hearing to explore whether counsel was ineffective during plea negotiations when counsel provided erroneous advice as to the penalty defendant would receive, causing the defendant to reject a favorable plea agreement).

While it is clear that counsel rendered gross misadvice with respect to the plea agreement, the state court found that the trial court's admonishment during the change of plea hearing cured counsel's gross misadvice. It is true that the Fourth Circuit has found that the defendant had not been prejudiced by any incorrect information counsel gave him regarding his sentence because of the district court's "careful explanation of the potential severity of the sentence" during the Rule 11 hearing. United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995). However in Foster, the specificity

26

and breadth of the court's admonishment were critical to deciding that the defendant is was not prejudiced. These considerations are equally as important in this case where the advice given is patently erroneous and the consequences at stake are "particularly severe," Padilla, 130 S. Ct. at 1481 (quoting Fong Yue Ting v. United States, 149 U.S. 698, 740, 13 S. Ct. 1016, 37 L. Ed. 905 (1893)), and have resulted in the "loss of both property and life, or of all that makes life worth living," Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S. Ct. 492, 66 L. Ed. 938 (1922). The severity of the consequence at issue and the clear error made by counsel in rendering the advice warrants a curative admonishment that is specific and unequivocal as to the sentencing consequences of Petitioner's conviction. See, United States v. Akinsade, 686 F.3d 248 (4th Cir. 2012)

In the instant case, the record conclusively establishes that had counsel not rendered objectively unreasonable advice, Petitioner would never have entered the plea agreement and would not have pleaded guilty had counsel not advised he and his mother that he knew the judge and that Petitioner would receive a sentence of 13 years imprisonment by entering the plea agreement. Moreover, the plea colloquy did not cure counsel's unreasonable advice because the trial court was unaware during the plea colloquy that counsel had rendered erroneous and inappropriate advice that Petitioner would receive a 13-year sentence because counsel had a special understanding with the judge. Therefore, the trial court's general admonishment during the plea colloquy is insufficient to correct counsel's gross misadvice that Petitioner would receive a 13-year sentence because counsel had a special understanding with the judge. Because Petitioner believed his punishment would be determined based on counsel's unique relationship with the judge, Petitioner could not have understood the court's admonishment concerning the plea he was about to enter.

Accordingly, Petitioner received ineffective assistance when counsel promised a sentence

that was impossible under the terms of the plea agreement, and told Petitioner he would receive the promised sentence because counsel had a special understanding with the judge. Thus, Petitioner asserts that counsel's performance was unreasonable under Hill, 474 U.S. at 56, Lafler, 566 U.S. at 163-64, and Lee, 137 S. Ct. 1958. Further, in both his letter to the court and in the instant motion, Petitioner asserted that if his attorney had provided reasonable advice, he would have never accepted the guilty plea. Therefore, Petitioner has demonstrated prejudice under Hill, 474 U.S. at 56, Lafler, and Lee, 137 S. Ct. 1958. In denying relief, the Virginia courts entered decisions that were contrary to, or unreasonable applications of U.S. Supreme Court precedent, and made unreasonable finding of fact, by failing to conclude that Petitioner's right to  the effective assistance of counsel was violated.

**D.       The AEDPA deadline to file must be equitably tolled because the failure to file previously was due to circumstances beyond Petitioner's control.**

As a result of the passage of the Anti-terrorism and Effective Death Penalty Act (AEDPA) in April 1996, significant standards for bringing state issues in federal courts have been established and time limitations have been imposed by Congress on the length of time within which a defendant can file a § 2254 petition. The AEDPA specifies that a state prisoner has only one year to file his § 2254 petition. 28 U.S.C. § 2244(d)(1). That one-year time period begins to run on the date that the state judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). Alternatively, if the Supreme Court recognizes a new constitutional right which is retroactively applicable to cases on collateral review, a claim based on that newly recognized right may be brought within one year after the right was initially recognized. 28 U.S.C. § 2244(d)(1)(C). Also, if new facts are discovered, claims made on the basis

28

of those new facts may be made within one year of when the facts could have been discovered. 28

U.S.C. § 2244(d)(1)(D).

Prior to the passage of the AEDPA, no statute of limitations had ever been imposed on the

federal writ of habeas corpus. United States v. Smith, 331 U.S. 469, 475, 91 L. Ed. 1610, 67 S. Ct.

1330 (1947) ("habeas corpus provides a remedy for jurisdictional and constitutional errors at the trial

without limit of time."). See Heflin v. United States, 358 U.S. 415, 420, 3 L.Ed.2d 407, 79 S.Ct. 451

(1959) (Stewart, J., concurring) (no statute of limitations). But, the AEDPA was enacted to "further

the principles of comity, finality, and federalism." Duncan v. Walker, 533 U.S. 167, 178, 121 S. Ct.

2120 (2001).

The one-year statute of limitations in AEDPA is not jurisdictional and is subject to equitable

tolling. See Holland v. Florida, 560 U.S. 631, 645-49, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010).

Because AEDPA's one-year statute of limitations is not jurisdictional, a petitioner who misses the

deadline may still maintain a viable habeas action if the court decides that equitable tolling is

appropriate." Allen v. Yukins, 366 F.3d 396, 401 (6th Cir. 2004) (citing Dunlap v. United States, 250

F.3d 1001, 1007 (6th Cir. 2001), cert. denied, 534 U.S. 1057 (2001)); see also Young v. United

States, 535 U.S. 43, 49, 152 L.Ed.2d 79, 122 S.Ct. 1036 (2002) ("It is hornbook law that limitations

periods are 'customarily subject to equitable tolling.'"). A habeas petitioner is entitled to equitable

tolling if it is established that "he has been pursuing his rights diligently" and "that some

extraordinary circumstance stood in his way and prevented timely filing." Id at 650. The doctrine of

equitable tolling allows federal courts to toll a statute of limitations when "a litigant's failure to meet

a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."

Graham-Humphrey's v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000);

29

Keenan v. Bagley, 400 F.3d 417, 421 (6th Cir. 2005); Moore v. United States, 173 F.3d 1131, 1133 (8th Cir. 1999)(equitable tolling is appropriate if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time); Kapral v. United States, 166 F.3d 565, 567 (3rd Cir. 1999); Calderon v. United States Dist. Ct., 163 F.3d 530, 541 (9th Cir. 1998); United States v. Griffin, 58 F. Supp. 2d 863, 868 (N.D. Ill. 1999).

The principles of equitable tolling do not extend to "garden variety" claims of excusable neglect on the part of a litigant's attorney. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 112 L.Ed.2d 435, 111 S.Ct. 453 (1990). In analyzing whether a habeas petitioner should be entitled to equitable tolling, the court should look at the factors laid out in Andrews v. Orr, 851 F.2d 146 (6th Cir. 1988). See Dunlap, 250 F.3d at 1008-09 (adopting Andrews factors in habeas context). Under Andrews, the court should consider "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." Andrews, 851 F.2d at 151; McClendon v. Sherman, 329 F.3d 490, 494 (6th Cir. 2003). This list of factors is not necessarily comprehensive, and not all factors are relevant in all cases. Vroman v. Brigano, 346 F.3d 598, 605 (6th Cir. 2003).

Equitable tolling is proper when the principles of equality would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has "in some extraordinary way * * * been prevented from asserting his or her rights." Miller v. New Jersey State Department of Corrections, 145 F.3d 616, 618-19 (3rd Cir. 1998). For instance, extraordinary circumstances may exist when a prisoner is unaware that his conviction has become final until after the one-year limitations period has expired. See Baskin v. United States, 998 F. Supp. 188, 190 (D.

30

Conn. 1998) (one-year statute of limitations equitably tolled when petitioner's counsel failed to notify him of the denial of certiorari until thirteen months after it occurred); see also Vasquez v. Greiner, 68 F. Supp. 2d 307, 310 (S.D.N.Y. 1999) (factual dispute as to when petitioner first learned of the finality of his conviction precluded dismissal of the petition as untimely). Brandon v. United States, 89 F. Supp. 2d 731, 734 (E.D. Va. 2000). Thus, equitable tolling may be appropriate if a litigant's attorney had been aware of a deadline and negligently failed to file on time or if the attorney was negligent in not ascertaining the filing deadline. Griffin v. Rogers, 399 F.3d 626, 637 (6th Cir. 2005).

Additionally, where an attorney has abandoned a client, such circumstances may warrant tolling. Schlueter v. Varner, 384 F.3d 69 (3d Cir. 2004). The law of agency provides a useful framework for understanding the distinction between attorney error and misconduct. See Baldayaque v. United States, 338 F.3d 145, 154 (2d Cir. 2003) (Jacobs, J., concurring). Ordinarily, "attorney ignorance or inadvertence" does not excuse a petitioner's non-compliance with [the] AEDPA, because "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation." Coleman v. Thompson, 501 U.S. 722, 753, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991) (rejecting attorney error as "cause" for procedurally defaulted habeas claims).  It is assumed that a lawyer is acting as the petitioner's agent, and the petitioner therefore "bear[s] the risk of attorney error." Coleman, 501 U.S. at 752-53; cf. Link v. Wabash R.R. Co., 370 U.S. 626, 634, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962) ("Each party is deemed bound by the acts of his lawyer-agent . . . .").

Applying such principles to the doctrine of equitable tolling, it has been found that acts by counsel equating to abandonment have justified the use of equitable tolling. In Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003), for example, an attorney failed to timely file a § 2255 motion

31

requested by his client and made inadequate efforts to communicate with him. The Second Circuit held that the attorney, "by refusing to do what was requested by his client on such a fundamental matter * * * violated a basic duty of an attorney to his client." Id. Counsel's actions, the Court continued, "were far enough outside the range of behavior that reasonably could be expected by a client that they may be considered 'extraordinary'" and thereby "justify the application of equitable tolling to the one-year limitations period of AEDPA." Id. at 152-53. See also, Spitsyn v. Moore, 345 F.3d 796, 798 (9ᵗʰ Cir. 2003) ("Based upon the unique facts of this case, where an attorney was retained to prepare and file a petition, failed to do so, and disregarded requests to return the files pertaining to petitioner's case until well after the date the petition was due, we agree that equitable tolling of the deadline is appropriate."); United States v. Wynn, 292 F.3d 226, 230 (5ᵗʰ Cir. 2002) ("Wynn's allegation that he was deceived by his attorney into believing that a timely § 2255 motion had been filed on his behalf presents a 'rare and extraordinary circumstance' beyond petitioner's control that could warrant equitable tolling of the statute of limitations.").

In the instant case, Petitioner finds himself in a difficult position because the AEDPA deadline to file a § 2254 petition was March 28, 2021. But because "objective factor[s] external to the defense" impeded Petitioner's efforts to file his petition in accordance with the AEDPA deadline, just cause is shown for the procedural default. Wolfe v. Johnson, 565 F.3d 140, 158 (4ᵗʰ Cir. 2009). Had his appellate counsel simply provided advice to Petitioner concerning the deadline to file a petition in federal court following the decision of the Supreme Court of Virginia, Petitioner would have sought such relief earlier. However, following the denial of his appeals in the Virginia courts, Petitioner was left unaware that he could pursue relief in a federal habeas petition under § 2254. Furthermore, during the time period when Petitioner could have sought post-conviction relief,

32

Petitioner was on nearly continuous lock down due to the COVID-19 pandemic. See Exhibit A, Affidavit. Petitioner had no access to legal materials for more than a year and Petitioner's access to communication with counsel and his family was limited and inconsistent, largely because mail was "quarantined" during the pandemic. Id. As a result Petitioner did not learn of the ability to seek further relief until far after the expiration of the date to seek post-conviction relief had expired. Id.

Since that time, Petitioner's has diligently sought to pursue his rights and file the instant § 2254 petition as soon as possible under the circumstances. Based upon the foregoing, Petitioner submits that he is entitled to equitable tolling of the period following the Supreme Court of Virginia's decision dismissing his appeal until approximately the filing of the instant petition, ed for the first time that the violation of his federal constitutional rights by the state could be remedied by the federal courts in a petition under § 2254. Principles of equity, constitutional interpretation, and common sense dictate that this Court reach such a result, and that the substantive issues raised herein be decided upon the merits.

//

//

33

## VII.   Conclusion

For these reasons, Petitioner requests that this Court grant his petition for writ of habeas corpus under 28 U.S.C. § 2254 and vacate his convictions and sentence.  In the alternative, if the Court deems that summary relief is inappropriate, an evidentiary hearing is requested pursuant to Rule 8 of the Rules Governing Section 2254 cases in the United States District Courts.

Respectfully submitted,

_M. Jones_      May 26, 2022

Markeyln Jones
1658057
Keen Mountain Correctional
P.O. Box 860
Oakwood, VA 24631

## AFFIDAVIT OF MARKELYN LAMONTRE JONES

(1)    I, MARKELYN LAMONTRE JONES, am the defendant in the criminal case arising from the Circuit Court of the City of Suffolk, Virginia. <u>Commonwealth v. Jones</u>, No. CR16001073-00. I am serving a sentence of 38 years' imprisonment at Keen Mountain Correctional, in Oakwood, Virginia following my conviction in that case. My registration number is 1658057. I have first-hand knowledge of the facts that follow.

(2)    I was represented by Attorney James Brocciletti and he advised me to accept a written plea agreement offered by the prosecutor. I wanted to proceed to trial but I felt pressured into entering the plea agreement by my attorney. My attorney told me that I would be convicted and receive a life sentence if I went to trial, but that he had a special understanding with the judge and said that if I entered the plea agreement, I would face a guideline sentence of 13 to 20 years and that the judge would sentence me to 13 years' imprisonment.

(3)    I became concerned because the presentence report called for a range of 18 to 31 years' imprisonment instead of 13 to 20 years. I asked my attorney to research the guidelines and object to the calculations. But my attorney told me not to worry because he knew the judge and that judge would sentence me below the guideline range calculated in the presentence investigation report. It turned out that a sentence of 13 years was not possible under the terms of the plea agreement and I received a sentence of 38 years' imprisonment. Had my attorney not provided this false advice, I would never have entered the plea agreement and I would have proceeded to trial.

(4)    From March 2020 until after the end of 2020, I was on lock down due to the COVID-19 pandemic. During this time period, I had no access to legal materials and my access to communication with the outside world was limited and inconsistent, because mail was "quarantined" during the pandemic. Additionally, my attorney never explained that I could file a post-conviction motion. As a result I did not learn of the ability to seek further relief until far after the expiration of the date to seek post-conviction relief had expired.

(4)    Further Affiant sayeth naught.

Pursuant to 28 U.S.C. 1746, I, James Junior Miller, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 2 6 day of May 2022.

<u>    M. Jones                    </u>
Markeyln Jones
1658057
Keen Mountain Correctional
P.O. Box 860
Oakwood, VA 24631